UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

HEATHER B.,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

**MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**

Case No. 1:25-cv-00129

Magistrate Judge Daphne A. Oberg

Heather B.[1] brought this action for judicial review of the denial of her application for disability insurance benefits and supplemental security income.[2] The administrative law judge (ALJ) who addressed Ms. B.'s application determined she did not qualify as disabled.[3] Ms. B. argues the ALJ erred by failing to consider the impact of her cancer treatment and improperly evaluating her subjective symptoms.[4] As explained below,

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–25, Doc. No. 12.)

[4] (*See* Opening Br. 5, Doc. No. 13.)

the ALJ applied the correct legal standards, and substantial evidence supports his findings. Accordingly, the Commissioner's decision is affirmed.[5]

**STANDARD OF REVIEW**

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 8.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

**APPLICABLE LAW**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) she has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] But at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. B. applied for disability insurance benefits and supplemental security income.[18] After an administrative hearing,[19] the ALJ issued a decision, finding Ms. B. not disabled and denying benefits.[20]

The ALJ considered whether Ms. B. was disabled between the time of her breast cancer diagnosis in February 2023 and her return to work in March 2024.[21] At step two of the sequential evaluation, the ALJ found Ms. B. had severe impairments of breast cancer and obesity.[22] At step three, the ALJ concluded her impairments did not meet or

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 170–91.)

[19] (Tr. 30–61.)

[20] (Tr. 17–25.)

[21] (Tr. 20.)

[22] (*Id.*)

medically equal an impairment listing.[23] The ALJ then found Ms. B. had the residual functional capacity (RFC) to perform "sedentary work" with certain limitations: "[She] can occasionally balance, stoop, kneel, crouch and crawl. [She] can occasionally climb ramps or stairs but cannot climb ladders, ropes or scaffolds. [She] can frequently reach, handle and finger. She should not be exposed to hazards."[24]

At step four, based on this RFC and the testimony of a vocational expert, the ALJ concluded Ms. B. could not perform past work.[25] But at step five, the ALJ found Ms. B. capable of other jobs in the national economy.[26] Accordingly, the ALJ found Ms. B. not disabled and denied her claims.[27] This decision became final when the Appeals Council denied Ms. B.'s request for review.[28]

## ANALYSIS

Ms. B. raises two claims of error relating to the RFC determination. First, she argues the ALJ failed to adequately account for the impact of her cancer treatment.[29] Second, she contends the ALJ failed to articulate valid reasons for rejecting her

---

[23] (Tr. 20–21.)

[24] (Tr. 21.)

[25] (Tr. 23–24.)

[26] (Tr. 24–25.)

[27] (Tr. 25.)

[28] (Tr. 1–3.)

[29] (Opening Br. 6–10, Doc. No. 13.)

testimony regarding her subjective symptoms.[30] As explained below, Ms. B. has not demonstrated any error requiring remand.

A. Impact of Cancer Treatment

A claimant's RFC reflects the most she can do in a work setting considering her limitations.[31] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[32] The ALJ considers all relevant evidence in the record.[33] This includes "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, [and] side effects of medication)."[34]

The ALJ acknowledged Ms. B.'s February 2023 breast cancer diagnosis and her treatment including "chemotherapy, right breast lumpectomy and lymph node evaluation."[35] The ALJ stated she "completed her breast cancer treatment in December

[30] (*Id.* at 10–13.)

[31] *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[32] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[33] *See* 20 C.F.R. §§ 404.1545(a)(3) 416.945(a)(3).

[34] SSR 96-8p, 1996 SSR LEXIS 5, at *13–14.

[35] (Tr. 22.)

2023."[36] He also concluded that "during the period of her cancer treatment," Ms. B. "required radiation treatment daily for multiple weeks, which would prevent her from working full time."[37] In addition, the ALJ found a treating provider's opinion—that Ms. B. could not perform her job duties from March 2023 to December 2023—to be persuasive, but he noted this opinion "related to the temporary period during which she was undergoing cancer treatment."[38]

Ms. B. claims the ALJ erred by finding her treatment ended in December 2023.[39] She contends her ongoing cancer treatment precluded her from working until March 2024.[40] As the Commissioner observes, this boils down to a durational argument.[41] "Disability," as relevant here, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to last for at least twelve consecutive months.[42] Ms. B. alleged a disability onset date of February 2, 2023,[43] meaning that even if the record otherwise supported a finding of

---

[36] (*Id.*)

[37] (Tr. 23.)

[38] (*Id.*)

[39] (Opening Br. 7, Doc. No. 13.)

[40] (*Id.* at 7–8.)

[41] (Comm'r's Br. 6, Doc. No. 19.)

[42] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[43] (*See* Tr. 62.)

disability, she would have to be unable to engage in substantial gainful activity continuously until at least February 2024 to qualify as disabled.

Ms. B. contends her treatment precluded full time work, due to absences, and the ALJ incorrectly stated that her treatment ended in December 2023.[44] She notes that while her surgery and radiation treatment were complete by December 2023, she received immunotherapy through February 14, 2024.[45] She also notes that "plans were made for removal of her Port-A-Cath" (used for chemotherapy) on March 21, 2024.[46] And a follow-up mammogram on March 22, 2024 "indicated no evidence of recurrence or residual disease."[47] Ms. B. contends it was only at that point her treatment ended, and she returned to work at the earliest opportunity.[48] She argues the ALJ improperly disregarded her "continued treatment and limitations resulting from immunotherapy and the surgery to remove her Port-A-Cath from January through March 2024."[49]

As an initial matter, the record shows Ms. B. had surgery to remove her Port-A-Cath on April 1, 2024[50]—after she returned to full-time work in March 2024.

---

[44] (*See* Opening Br. 7–8, Doc. No. 13.)

[45] (*Id.* (citing Tr. 672).)

[46] (*Id.* at 8 (citing Tr. 722).)

[47] (*Id.* (citing Tr. 716).)

[48] (*Id.*)

[49] (*Id.*)

[50] (Tr. 729.)

Accordingly, this surgery does not support Ms. B.'s claim of disability during the relevant period before her return to work.

Ms. B. is correct that the ALJ did not acknowledge her continued immunotherapy treatment beyond December 2023. She contends he should have considered whether the treatment limited her ability to sustain regular attendance during this period.[51] But the treatment record she cites shows she received immunotherapy approximately every three weeks after March 15, 2023—once or twice per month.[52] This included two appointments in January and one in February 2024 (the February 14 visit).[53] Ms. B. cites no records of immunotherapy after that date. The vocational expert testified two to three absences per month on a "recurring basis" would preclude employment.[54] But the immunotherapy treatment occurred less frequently than this (only once or twice per month). Accordingly, Ms. B. has not shown her immunotherapy limited her ability to sustain attendance at a level precluding employment.

Likewise, Ms. B. does not establish that this continued treatment caused other functional limitations between January and March 2024. For instance, her February 14, 2024 treatment record indicated Ms. B. "had good energy level," [n]o fevers, chills or sweats," and "no nausea, vomiting, [or] diarrhea" (with no other symptoms noted).[55]

---

[51] (Opening Br. 8–9, Doc. No. 13.)

[52] (Tr. 672.)

[53] (*Id.*)

[54] (Tr. 58–59.)

[55] (Tr. 672.)

In sum, Ms. B. fails to identify evidence that ongoing cancer treatment after December 2023 caused functional limitations, including excessive absences, during that period. Accordingly, the ALJ's failure to acknowledge this treatment was harmless.

A. Subjective Symptom Evaluation

Ms. B. also fails to show the ALJ erred in his consideration of her subjective symptoms. The governing regulations and agency guidance require ALJs to evaluate a claimant's subjective symptoms using a two-step process.[56] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[57] Second, he must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to

[56] *See* SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016); 20 C.F.R. §§ 404.1529, 416.929. Ms. B. also relies on the Tenth Circuit's three-step framework for considering a claimant's subjective pain. *See Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (describing the *Luna* framework). But as she acknowledges, (*see* Opening Br. 10, Doc. No. 13), the two-step analysis under SSR 16-3p comports with *Luna*'s three-step process. *See Paulek v. Colvin*, 662 F. App'x 588, 593–94 (10th Cir. 2016) (unpublished) (finding a subjective symptom evaluation comported with *Luna* where the ALJ considered "the degree to which [the claimant's] subjective claims were consistent with the medical evidence" under SSR 16-3p); *John A.S. v. Bisignano*, No. 25-cv-00030, 2025 U.S. Dist. LEXIS 223111, at *6 n.7 (N.D. Okla. Nov. 13, 2025) (unpublished) ("The two-step analysis under SSR 16-3p, 2016 SSR LEXIS 4 comports with [the] prior, three-step process under *Luna*."). Accordingly, Ms. B.'s arguments are considered under the two-step framework.

[57] SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016); *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

perform work-related activities."[58] In doing so, the ALJ "examine[s] the entire case record."[59] The ALJ considers factors such as: the claimant's daily activities; the duration, frequency, and intensity of pain or other symptoms; medication taken and whether it alleviates the symptoms; and other treatment or measures used to relieve the symptoms.[60] The ALJ also considers any inconsistencies between the claimant's statements and the rest of the evidence, including the claimant's history, medical signs and laboratory findings, and statements by medical sources and others.[61]

Ms. B. contends the ALJ did not explain why he rejected her testimony concerning fatigue, difficulty with daily activities, neuropathy, and treatment frequency.[62] As explained below, the ALJ applied the correct legal standards in evaluating Ms. B.'s subjective symptoms, and substantial evidence supports his findings.

The ALJ considered Ms. B.'s testimony that: she had shortness of breath and had to rest; she had neuropathy in all her extremities, including swelling and painful feet; she needed help to grasp a gallon of milk; and she had trouble doing even simple math calculations due to difficulty concentrating.[63] He also considered her written

---

[58] SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[59] SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[60] SSR 16-3p, 2016 SSR LEXIS 4, at *18–19; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[61] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

[62] (Opening Br. 11, Doc. No. 13.)

[63] (Tr. 21.)

reports that she could not stand for long periods; she could not hold objects without her hands aching; she got dizzy; she suffered from light-headedness, vomiting, diarrhea, swollen feet, low blood counts, and extreme fatigue; and she got confused and couldn't finish sentences.[64] The ALJ then applied the required two-step process, finding Ms. B.'s impairments could reasonably be expected to cause her symptoms, but her statements concerning the intensity, persistence, and limiting effect of these symptoms were "not entirely consistent with the medical evidence and other evidence."[65]

Specifically, the ALJ noted that examination findings were "generally normal" in March, April, May, July, and August 2023, with various records noting normal gait; normal or appropriate mood and affect; no musculoskeletal abnormalities; normal range of motion; no cyanosis, clubbing, or edema; no areas of focal weakness or numbness; and no sensory problems.[66] The ALJ acknowledged the May and July 2023 examinations revealed fatigue and decreased energy levels (but were otherwise normal).[67] Ultimately, he found Ms. B.'s "ability to lift and carry at the sedentary exertional level [was] consistent with multiple examinations during which she demonstrated normal musculoskeletal abilities" and normal gait.[68] As the ALJ explained, he accommodated Ms. B.'s impairments by including postural limitations;

---

[64] (Tr. 22.)

[65] (*Id.*)

[66] (*Id.* (citing Tr. 375, 379, 409, 421, 427 (hearing exhibit 3F/15, 19, 49, 61, 67)).)

[67] (*Id.* (citing Tr. 379, 409 (hearing exhibit 3F/19, 49).)

[68] (*Id.*)

reaching, handling, and fingering limitations; and hazard limitations.[69] But "[d]espite all of these limitations, the vocational expert still found work" Ms. B. could perform.[70]

Ms. B. argues the ALJ's reference to normal musculoskeletal abilities and normal gait were "non-sequitur[s]" because she did not claim a musculoskeletal impairment.[71] But the ALJ reasonably concluded these and other examination findings (including lack of edema or sensory problems) were not entirely consistent with Ms. B.'s reports of dizziness, swelling, neuropathy, and limitations in standing and grasping. The evidence the ALJ relied on is more than a "mere scintilla"[72] and qualifies as substantial evidence supporting his findings. Ms. B.'s argument to the contrary is merely an invitation to reweigh the evidence. Ms. B. also argues the ALJ failed to consider Ms. B.'s "obesity that has contributed to lymphedema and limitations in [her] upper extremities."[73] But she cites no record evidence in support of this argument.[74] She does not identify any evidence the ALJ failed to consider.

In sum, the ALJ provided specific reasons for finding Ms. B.'s subjective symptoms somewhat inconsistent with the medical evidence. And the records he cited

---

[69] (*Id.*)

[70] (*Id.*)

[71] (Opening Br. 11–12, Doc. No. 13.)

[72] *Biestek*, 587 U.S. at 103.

[73] (Opening Br. 12, Doc. No. 13.)

[74] *See Eateries, Inc. v. J. R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (noting the court "need not sift through the record to find evidence to support a party's argument" (citation modified)).

support his finding that Ms. B. was not as limited as she alleged. For all these reasons, Ms. B. has not demonstrated error in the ALJ's evaluation of her subjective symptoms.

**CONCLUSION**

The Commissioner's decision is affirmed.

DATED this 21st day of September, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge